**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KEVIN M. ROHRBACH, AND
ANALIA M. ROHRBACH H/W,

      Plaintiffs,

      v.

NVR, INC. T/A RYAN HOMES,
JOHN DOES 1-10, AND
JOHN DOE CORP. 1-10,

      Defendants.

CASE NO. 2:19-CV-05847-CMR

**DEFENDANT NVR, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**ARMSTRONG TEASDALE LLP**

Jonathan P. Boughrum, Bar # 91019
Michael C. Witsch, Bar #313884
2005 Market St., 29th Fl.
One Commerce Sq.
Philadelphia, PA 19103
Telephone:  267.780.2000
jboughrum@atllp.com
mwitsch@atllp.com

*Counsel for Defendant NVR, Inc.*

# CONTENTS

I.   INTRODUCTION .................................................................................................................1

II.  UNDISPUTED MATERIAL FACTS AND PROCEDURAL HISTORY .....................................1

III. ARGUMENT ......................................................................................................................6

    A. Legal Standard. ............................................................................................................6

    B. Plaintiffs are not entitled to rescission. ......................................................................7

        1.  Plaintiffs have expressly elected rescission as their remedy. ...................................8

        2.  Plaintiffs did not make a prompt and unambiguous claim for rescission. ...............9

        3.  Plaintiffs cannot profit from their own misconduct in frustrating the
           performance of the contract. ...................................................................................11

        4.  Plaintiffs cannot prove entitlement to rescission on the merits regardless. ..........13

           a.  No material misrepresentation or justifiable reliance thereon. ......................13

           b.  Inability to restore status quo ante. ...............................................................15

    C. Plaintiffs have abandoned their non-rescission claims. ............................................18

    D. Summary judgment would also be alternatively warranted on Plaintiffs' remaining
       claim(s) because they will not attempt to, and cannot, prove damages. ....................18

    E. Likewise, and in the alternative, Plaintiffs cannot prove their case on the merits. ...19

        1.  Plaintiffs cannot show a material misrepresentation on which they justifiably
           relied or "ascertainable loss." Thus, their UTPCPL claim would fail. .................19

        2.  Plaintiffs cannot prove their fraudulent inducement claim. ...................................20

IV.  CONCLUSION ................................................................................................................21

# AUTHORITIES

**Page(s)**

**Cases**

*Berckeley Inv. Group, Ltd. v. Colkitt,*
    455 F.3d 195 (3d Cir. 2006) ...........................................................................................7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .......................................................................................................19

*Corsale v. Sperian Energy Corp.,*
    412 F. Supp.3d 556 (W.D. Pa. 2019) ...........................................................................14

*Davidson v. Apple, Inc.,*
    No. Civ.A. 16-CV-4942, 2017 WL 3149305 (N.D. Cal. Jul. 25, 2017) .............................14

*DeSimone v. U.S. Claims Servs., Inc.,*
    No. Civ.A. 19-6150, 2020 WL 1164794 (E.D. Pa. Mar. 11, 2020) ........................... 19, 20

*Eigen v. Textron Lycoming Reciprocating Engine Div.,*
    874 A.2d 1179 (Pa. Super. 2005) ...................................................................................13

*El v. Se. Pennsylvania Transp. Auth. (SEPTA),*
    479 F.3d 238 (3d Cir. 2007) ...........................................................................................7

*Gaudiosi v. Mellon,*
    269 F.2d 873 (3d Cir. 1959) ...........................................................................................13

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs.,*
    217 A.3d 1227 (Pa. 2019) .........................................................................................8, 10

*Gregg v. Ameriprise Fin., Inc.,*
    245 A.3d 637 (Pa. 2021) .................................................................................................20

*Heath v. Palmer,*
    915 A.2d 1290 (Vt. 2006) ...............................................................................................14

*Holmes Elec. Protective Co. of Phila. v. Goldstein,*
    24 A.2d 161 (Pa. Super. 1942) .......................................................................................9

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,*
    90 F.3d 737 (3d Cir. 1996) .............................................................................................6

*Jallad v. Madera,*
    474 F.Supp.3d 667 (E.D. Pa. 2020) (Rufe, J.) ...............................................................6

*Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.,*
   77 A.3d 1 (Pa. Super. 2013) ........................................................................10

*Koch v. Kaz USA, Inc.,*
   No. Civ.A. 09-CV-02976, 2011 WL 2610198 (D. Colo. Jul. 1, 2011) ...........................14

*Kovalev v. Lidl US, LLC,*
   No. CV 21-3300, 2022 WL 17858055 (E.D. Pa. Dec. 21, 2022) .................................14

*Lakeside Forge Co. v. Freedom Oil Wks.,*
   109 A. 216 (Pa. 1920) ..............................................................................16

*Landau v. Virdian Energy PA LLC,*
   223 F. Supp.3d 401 (E.D. Pa. 2016)..................................................................14

*Lavecchia v. Fleming*
   No. Civ.A. 22-390, 2023 WL 144120 (E.D. Pa. Jan. 9, 2023) ...................................8

*Lavecchia. v. Flemming*
   No. Civ.A. 22-390, 2023 WL 1805134 (E.D. Pa. Feb. 7, 2023) .........................8, 9, 13, 15

*In re Marshall,*
   613 B.R. 194 (Bankr. E.D. Pa. 2020)..................................................................20

*McAllister v. Royal Caribbean Cruises, Ltd.,*
   No. CIV.A. 02-CV-2393, 2003 WL 23192102 (E.D. Pa. Sept. 30, 2003)........................19

*McKenny v. United States,*
   937 F.3d 1291 (11th Cir. 2020) ......................................................................17

*Moody v. Atl. City Bd. of Educ.,*
   870 F.3d 206 (3d Cir. 2017).........................................................................6

*New-Com Corp. v. Est. of Gaffney,*
   72 B.R. 90 (Bankr. W.D. Pa. 1987)..................................................................11

*Reiff v. Marks,*
   No. 08-CV-5963, 2011 WL 666139 (E.D. Pa. Feb. 23, 2011) (Rufe, J.)...........................7

*In re Rutter's Inc. Data Sec. Breach Litig,*
   511 F. Supp.3d 514 (M.D. Pa. 2021)..................................................................20

*Savitz v. Gallaccio,*
   118 A.2d 282 (Pa. Super. 1955)......................................................................10

*Schwartz v. Rockey,*
   932 A.2d 885 (Pa. 2007) ..............................................................................8

*Sullivan v. Allegheny Ford Truck Sales, Inc.,*
   423 A.2d 1292 (Pa. Super. 1980)..................................................................................................7

*Umbelina v. Adams,*
   34 A.3d 151 (Pa. Super. 2011) .......................................................................................................8

*Williams v. Borough of W. Chester,*
   891 F.2d 458 (3d Cir.1989) ...........................................................................................................7

*Wolgin v. Smith,*
   No. Civ.A. 94-7471, 1996 WL 355338 (E.D. Pa. Jun. 21, 1996).......................................................9

**Statutes**

73 P.S. § 201, et seq. ...................................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 26 .........................................................................................................................17

**Other Authorities**

5 Bus. & Com. Litig. Fed. Cts. § 58:36 ........................................................................................10

Summary of Pennsylvania Jurisprudence 2d.............................................................................9, 11

## I.    INTRODUCTION

At the last hearing in September 2022, the Court cautioned Plaintiffs that this is an "expert case." *See* Ex. 1 (N.T. 09/29/22) at 20:1-2. In response, Plaintiffs' counsel at least implied that Plaintiffs would obtain a damages expert, *id.* at 18:1-19, but they did not do so. Instead, they later dropped any claims for actual damages and diminution in value and elected to proceed solely on an equitable request for rescission. Their only putative liability expert agrees that most of the construction issues Plaintiffs have alleged with their property are "readily taken care of" and "punch list" items and that every issue he observed at Plaintiffs' property can be fixed. Despite that the items could have been remedied under the NVR warranty and that Plaintiffs have lived continuously in their home for four years, Plaintiffs nonetheless seek rescission of their sale contract with Defendant NVR, Inc. ("NVR") on the theory they were promised a "quality" house. As discussed below, Plaintiffs' remaining claims fail as a matter of law and must be dismissed on summary judgment.

## II.    UNDISPUTED MATERIAL FACTS AND PROCEDURAL HISTORY

There is no genuine dispute about the following material facts.

Plaintiffs are a husband and wife who bought a house in the Hanover Pointe development in Pottstown, Pennsylvania, from NVR for $358,300 in November 2018. Ex. 2 (Pennsylvania Purchase Agreement). They moved into the house in April 2019. Ex. 3 (A. Rohrbach Dep.) at 36:12–18.[1] Before buying their house from NVR, Plaintiffs had been under contract for the sale of a different house but backed out of that sale agreement prior to settlement. *Id.* at 30:10–32:24; Ex. 7 (Taylor Dep.) at 47:14–50:3. They then identified NVR (trading as Ryan Homes) as a builder of houses they found "very nice," and "so pretty and beautiful." Ex. 3 (A. Rohrbach Dep.) at 24:10–29:17.

---

[1] Plaintiffs' depositions were recorded both stenographically and by video. The videos of those depositions are included here as Exs. 4, 5, 6 for the Court's reference. (Mrs. Rohrbach's deposition consists of two sequential video files.)

An NVR employee named Mary Taylor was Plaintiffs' principal point of contact in the pre-contracting period during which they allege material misrepresentations were made to them about the "quality" of their to-be-constructed house. *Id.* at 34:6–10. Ms. Taylor later said she eventually asked a superior to take over her interactions with Plaintiffs because she was tired of "being emotionally abused by them" and "yelled at throughout this entire process from these people." Ex. 7 (Taylor Dep.) at 78:18–81:18. In their verified responses to NVR's interrogatories (any objection to which having been earlier found waived by the Court, Order, ECF No. 51 at 3–4), Plaintiffs identified the alleged misrepresentations made to them:

> …. Plaintiffs Analia Rohrbach and Kevin Rohrbach had numerous verbal conversations with Mary Taylor both prior to the execution of the Agreement of Sale, and after the Agreement of Sale but prior to the closing, where Ms. Taylor repeatedly praised the **quality of the home construction**. Ms. Taylor also specifically stated that NVR personnel were "highly qualified." She repeated this in the pre-construction meeting with Cody Shustack, whom she praised as one of the most qualified and brightest at NVR. In addition, Defendant routinely advertised on both physical signs and the internet that it was a **quality home builder**. Plaintiffs relied on these representations of **quality home construction** when deciding to purchase the Home.

Ex. 8 (Pls.' Suppl. Resp. to Interrogs.) at Resp. 2 (emphasis added). The core allegation here is that those statements were supposedly material misrepresentations because Plaintiffs do not believe the house NVR built for them was of sufficient "quality," and that they relied on these statements about "quality" in contracting for the purchase of their house.

In the first month and a half after moving into the property, Plaintiffs called NVR to make complaints more than three dozen times. Ex. 3 (A. Rohrbach Dep.) at 196:9–200:7; Ex. 9 (NVR House History Report documenting interactions with Plaintiffs). Some complaints they lodged to NVR—for example, their trash not being picked up as scheduled, *id.*, at entry 158503—had nothing to do with NVR. But when those complaints involved NVR responded to address them, consistent with the NVR Limited Warranty that applies to covered issues with the house. Ex. 10 (Limited Warranty). NVR's construction team found Plaintiffs "challenging, to say the least," but wanted to ensure their

2

house was well-constructed. Ex. 11(Shustack Dep.) at 58:6–59:5. At the outset, Plaintiffs' main concern was that their sump pumps were cycling too often. *Id.* at 81:11–82:19. NVR remedied that issue by raising the sump pumps and "daylighting" the pipes that carried water away from them; Plaintiffs agree that once that correction was made, the sump pumps stopped cycling as often. Ex. 3 (A. Rohrbach Dep.) at 101:21–106:16 Ex. 12 (K. Rohrbach Dep.) at 39:8–16.

They also developed an unsubstantiated theory that there was a stream or other flowing water underneath their house after Mrs. Rohrbach heard from an unidentified mail carrier, and possibly others, that the development had been built on or near a preexisting swampland. Ex. 3 (A. Rohrbach Dep.) at 139:15–142:22. Plaintiffs acknowledge, however, that they lack any experience with construction issues and have observed no visible evidence of water intrusion to their basement. *Id.* at 18:23–19:2; 36:19–38:18; 42:1–47:20; 66:9–68:15; 106:23–110:6; 143:12–149:1; 166:9–169:22; 275:3–20; Ex. 12 (K. Rohrbach Dep.) 7:7–10; 19:11–36:10. The hydrology "expert" who Plaintiffs identified early in the case has been withdrawn and there is zero evidence that there is a "stream" or other "continuous flow of water" underneath or in proximity to Plaintiffs' house. *See, e.g*, Ex. 13 (Patarcity Dep.) at 64:2–67:20; Ex. 14 (Patarcity Dep. Ex. 6); Ex. 15 (Mohan Dep.) at 110:14–123:19; Ex. 16 (Mohan Dep. Ex. 5); Ex. 17 (Mohan Dep. Ex. 6);[2] Ex. 18 (Mohan Dep Ex. 7).

This underground water issue was contemporaneously Plaintiffs' supposed primary concern. Yet when NVR agreed to bring an engineer to the house to investigate Plaintiffs' concerns about their house, including the alleged "stream," Plaintiffs unilaterally cancelled the meeting. Ex. 12 (K. Rohrbach Dep.) at 19:11–36:10; Ex. 3 (A. Rohrbach Dep.) at 201:9–208:14; 269:20–272:10; Ex. 9 (NVR House History Report) at entry 158269; Ex. 19 (C. Pearson Dep.) at 57:1–64:17; Ex. 20 (video of Mrs. Rohrbach turning NVR representatives and engineer away from house); Ex. 21 (Jun. 14, 2019

---

[2] The version of Mohan Exhibit 6 attached here has been excerpted to only those pages relevant to that testimony due to the length (more than 100 pages) and file size of that exhibit. NVR would be happy to provide a complete version of that exhibit should the Court desire it to do so; however, the balance of that document is irrelevant to the subject testimony.

letter from NVR to Plaintiffs offering to address concerns even after cancelled meeting). In other words, NVR attempted to honor its Limited Warranty, but the Plaintiffs obstructed the process.

This erratic and contemptuous behavior on Plaintiffs' part toward NVR representatives was not an isolated incident: Mrs. Rohrbach admitted to at least attempting to mace one of NVR's contractors or subcontractors and there is extensive video and photographic evidence of Plaintiffs repeatedly accosting them, calling the police about them, and barring them from their property despite a contrary contractual provision allowing NVR to set foot on the property for certain reasons. Exs. 22-30 (videos of Plaintiffs' confrontations with NVR representatives and police); 31 (photographs of "no trespassing" signs); Ex. 3 (A. Rohrbach Dep.) at 276:1–289:3; Ex. 2 (Purchase Agreement) at 3.

There also is no dispute that Plaintiffs' house was and is covered by a contractual warranty, about which Plaintiffs knew before contracting, and under which Plaintiffs can request that NVR fix covered perceived issues in the construction of their house. Ex. 2 (Purchase Agreement) at 2–3; Ex. 10 (Limited Warranty); Ex. 12 (K. Rohrbach Dep.) at 11:9–15:18. Under the Purchase Agreement and the NVR Limited Warranty, NVR has a right to make repairs. Ex. 2 (Purchase Agreement), ¶ 6 ("If any defect is discovered during the applicable warranty period, we shall have the exclusive right to determine whether the defect shall be corrected by repair, adjustment or replacement." (emphasis omitted)); Ex. 10 (Limited Warranty), ¶ 8 ("If and when a defect for which the Builder is responsible under Sections 3, 4 or 5 of this Warranty occurs, the Purchaser must give prompt and written notice . . . [and] . . . the Builder will repair, replace, or pay the reasonable cost of repairing or replacing the defective component. The Builder will have the right to decide in its own discretion which of those remedies it will provide."). As detailed here, NVR attempted from day one to honor its warranty in responding to the items Plaintiffs identified but Plaintiffs failed to cooperate.

Plaintiffs' sole proposed expert witness agrees that all the issues Plaintiffs have identified with their house can be corrected and that most of those issues are "readily taken care of" "punch list"

4

items. Ex. 13 (Patarcity Dep.) at 18:14–19:14; 82:15–19; 91:19–121:3; Ex. 32 (Patarcity Dep. Ex. 8).[3]

Yet, because Plaintiffs refused to meet with NVR or allow it reasonable access to their house, Plaintiffs prevented NVR from remedying their perceived problems with the house under the warranty. Even after engaging their current counsel, Plaintiffs stated that they sought from NVR "a fully remediated home." Ex. 33 (Jul. 2, 2019 email correspondence between P. Bryant and NVR General Counsel J. Sack).

Plaintiffs initially pleaded that they were entitled to damages, including for the "[d]imunition of the value of" the house. Second Am. Compl., ECF No. 29, ¶ 13(ii). Plaintiffs have abandoned any claim for such actual damages and are proceeding exclusively on an equitable rescission theory. The specific relief Plaintiffs now say they want is

> recission [sic] of the sale of the Home, which would necessitate the return of the principal amounts paid for the sale of the Home, plus the following out of pocket costs: $16,502 in real estate taxes; HOA fees of $3060; [c]losing costs of $13,086.65; [a]ttorneys fees of $58,000; [e]xpert fees of $12,000. The attorneys' fees and expert fees will increase throughout the litigation. While the main relief Plaintiffs seek is recission [sic] of the sale, in the event that Plaintiffs seek alternative relief in the form of monetary damages[,] Plaintiffs will produce an expert report regarding the cost to repair the defects in the Home by October 24, 2022, in accordance with the case management order.

Ex. 8 (Pls.' Suppl. Resps. to Interrogs.) at Resp. 1.  Relevant here, Count IV of Plaintiffs' Second Amended Complaint (for fraudulent inducement) is the **only** cause of action that vaguely makes a request for rescission. Second Am. Compl., ECF No. 29, ¶ 129.  For example, Plaintiffs' claim under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which is Count III, includes requests for actual and treble damages, and relocation costs,[4] and diminution in value, not rescission. Even under Count IV, however, Plaintiffs cannot show entitlement to rescission under the facts here.

---

[3] NVR has separately filed a Motion to Exclude Testimony of Plaintiffs' Expert Randy Patarcity. ECF No. 72

[4] Plaintiffs, who still live in the house, have since admitted they have no such "relocation costs." Ex. 8 (Pls.' Suppl. Resps. to Interrogs.), at Resp. 9.

Plaintiffs have also now expressly abandoned their claims for breach of contract (Count I) and breach of implied warranty (Count II). They informed NVR of their election of rescission as a remedy in January of this year and confirmed last week that they are dropping their contractual claims. Ex. 34 (Jan. 25, 2023 email from P. Bryant to J. Boughrum); Ex. 35 (Apr. 20, 2023 email from P. Bryant to J. Boughrum).

Discovery is closed and Plaintiffs never sought leave to amend the operative complaint. They have offered no explanation as to why the UTPCPL claim, which does not plead a request for rescission, should remain in the case.  As explained below, Plaintiffs do not have a right to rescission.

## III.   ARGUMENT

The Court should enter summary judgment for NVR. There is no genuine dispute as to any material fact and NVR is entitled to judgment as a matter of law. Plaintiffs are not entitled to the equitable remedy of rescission of the contract for the purchase of their house.

### A.  Legal Standard.

"A court will award summary judgment on a claim or part of a claim where there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Jallad v. Madera*, 474 F.Supp.3d 667, 671 (E.D. Pa. 2020) (Rufe, J.) (quoting Fed. R. Civ. P. 56(a)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). The moving party is entitled to summary judgment where "the non-moving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). Once the movant has met its burden of proof for summary judgment, the opposing party "must point to actual evidence in the record on

which a jury could decide an issue of fact its way." *El v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 238 (3d Cir. 2007).

To survive summary judgment, the party opposing the motion must raise "more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989). They must instead cite specific evidence in the record and may not "rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (describing summary judgment as "put up or shut up time for the non-moving party"). Both the movant and the party opposing summary judgment must cite to evidence in the record that would be admissible at the time of trial. *Reiff v. Marks*, No. 08-CV-5963, 2011 WL 666139, at *4 (E.D. Pa. Feb. 23, 2011) (Rufe, J.).

### B.  Plaintiffs are not entitled to rescission.

Plaintiffs made an equivocal reference to "recission" [sic] in the Second Amended Complaint asking in one paragraph of Count IV (fraudulent inducement) for the equitable remedy of rescission, but only, apparently, in the alternative to a request for actual damages for the costs of repairing their house. Second Am. Compl., ECF No. 29, at ¶ 129. Plaintiffs have now made clear they "are seeking recission [sic], not repair damages as set forth in our complaint." Ex. 34 (Jan. 25, 2023 email from P. Bryant to J. Boughrum); Ex. 35 (Apr. 20, 2023 email from P. Bryant to J. Boughrum). Having made that election, Plaintiffs are now bound to it.

Rescission is an equitable remedy that restores parties to their pre-contract positions by voiding a contract from its inception. It can "be granted only where the parties to the contract can be placed in their former positions with regard to the subject matter of the contract." *Sullivan v. Allegheny Ford Truck Sales, Inc.*, 423 A.2d 1292, 1295 (Pa. Super. 1980) (citation omitted). To be entitled to rescission of a contract a party must therefore show "(1) the opposing party made a material misrepresentation, whether or not the opposing party was aware of the falsehood; (2) the party seeking

7

rescission justifiably relied on the misrepresentation; and (3) the parties can be restored as nearly as possible to their original positions." *Lavecchia. v. Flemming*, No. Civ.A. 22-390, 2023 WL 1805134, at *1 (E.D. Pa. Feb. 7, 2023) (citations omitted). Plaintiffs cannot show they are entitled to equitable rescission.

### 1.  Plaintiffs have expressly elected rescission as their remedy.

To begin with, "[t]he doctrine of election of remedies prohibits a party from seeking inconsistent relief; a party alleging he has been defrauded in a contract must choose whether to seek rescission of the contract or to seek damages under the contract." *Umbelina v. Adams*, 34 A.3d 151, 157 (Pa. Super. 2011) (citing *Schwartz v. Rockey*, 932 A.2d 885, 889 (Pa. 2007)). Courts have noted that a party must make this election of remedies "at some point prior to final judgment." *Schwartz*, 932 A.2d at 892-93.

But after a party makes a pretrial election it is bound to that decision and may not afterward pursue different remedy theories. *Umbelina*, 34 A.3d at 162 (holding that where plaintiff had made a pretrial decision to pursue rescission remedy, trial court erred in awarding damages under theory of breach of implied warranty); *Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs.*, 217 A.3d 1227, 1238–39 (Pa. 2019) ("Our courts have consistently held once a party makes a 'binding' election of one remedy over other inconsistent remedies, it is precluded from thereafter maintaining an action on those inconsistent remedies; further, a 'binding' election of remedies occurs when there has been a legal resolution, such as a settlement, a stipulation, a waiver, an express withdrawal or abandonment of claims, a judgment, or application of another exclusionary rule, and in such circumstances, the electing party may no longer pursue alternative forms of relief on a given claim.") (citation omitted); *Lavecchia v. Fleming*, No. Civ.A. 22-390, 2023 WL 144120, at *5 (E.D. Pa. Jan. 9, 2023) ("Here the

8

plaintiffs elected in their complaint the remedy of rescission[,] which includes restitution and have waived any right to damages under [a statute].").[5]

Plaintiffs have made such an election of rescission as their sought-after remedy by writing to NVR several months ago, after the parties finished fact discovery, that they now "are seeking recission [sic], not repair damages as set forth in our complaint." Ex. 34 (Jan. 25, 2023 email from Plaintiffs' counsel to NVR's counsel); Ex. 35 (Apr. 20, 2023 email from Plaintiffs' counsel to NVR's counsel). They have thus waived the right to proceed under different theories of relief and damages. As a first step, the Court should so hold and by doing so limit the scope of this case to solely whether Plaintiffs can prove entitlement to rescission.

### 2. Plaintiffs did not make a prompt and unambiguous claim for rescission.

Plaintiffs cannot, however, show they are entitled to rescission for several reasons. For one, it is required that a Plaintiff seeking rescission make a prompt and unambiguous request for rescission. *E.g*, 16 Summ. Pa. Jur. 2d Commercial Law § 5:40 (2d ed.) ("[T]o be effective, a notice for the rescission or termination of a contract must be clear and unambiguous and convey an unquestionable purpose to insist on the rescission."); *Wolgin v. Smith*, No. Civ.A. 94-7471, 1996 WL 355338, at *3 (E.D. Pa. Jun. 21, 1996) ("In order to obtain a rescission, the party must act promptly upon discovery of the fraud to restore or tender any benefit received or the right to rescind is waived.") (citation omitted). "Where one has a right to rescind a contract but his or her conduct is ambiguous, and it is not clear whether he or she has rescinded it or not, such person will be deemed not to have rescinded the contract." 16 Summ. Pa. Jur. 2d Commercial Law § 5:41 (2d ed.); *see also, e.g*, *Holmes Elec. Protective Co. of Phila. v. Goldstein*, 24 A.2d 161, 164 (Pa. Super. 1942) ("To be effective, a notice for the rescission or termination of a contract must be clear and unambiguous, conveying an unquestionable purpose

---

[5] The *Lavecchia* case cited above (at 8) is the court in that matter's denial of the plaintiffs' motion to amend and/or alter the judgment in that case. This *Lavecchia* decision is the earlier memorandum opinion granting judgment and detailing its reasoning. For the Court's benefit, that case is presently on appeal to the Third Circuit and is docketed at No. 23-01322.

to insist on the rescission. And where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so.") (internal quotation marks and citation omitted); *accord Savitz v. Gallaccio*, 118 A.2d 282, 285 (Pa. Super. 1955); *Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.*, 77 A.3d 1, 8 (Pa. Super. 2013).

Here, Plaintiffs made over three dozen complaints to NVR within the first month and a half of living in their house. Ex. 3 (A. Rohrbach Dep.) at 190:1–195:3; Ex. 9 (NVR House History Report). They were aware their home was covered by a limited warranty provided by NVR. *Id.*, Ex. 12 (K. Rohrbach Dep.) at 13:8–15:18. And in making those warranty complaints in the spring and summer of 2019— concerning the construction of their house— the Plaintiffs were knowingly availing themselves of their contractual remedies under the warranty. *See, e.g, Gamesa*, 217 A.3d at 1240 ("it is clear that a party waives, or more aptly elects **against**, the right to recover restitution for total breach when it accepts or receives partial performance, or continues to perform or benefit under the contract"; in such circumstances, the law presumes the non-breaching party has elected against rescission) (citations omitted, emphasis in original).

Even after engaging counsel, Plaintiffs confirmed in July 2019 not that they viewed the purchase agreement in full force and effect and sought to discuss with NVR "how to achieve a fully remediated home" and indicated to NVR that it was "putting together a full list of the defects." Ex. 33 (Jul. 2, 2019 email correspondence between P. Bryant and NVR General Counsel J. Sack). It was only later that the first mention of "recission" [sic] came in the initial complaint under the header "fraudulent inducement," where Plaintiffs made a vague reference to their belief that rescission might be appropriate as an alternative remedy to actual damages. Compl., ECF No. 1, ¶ 111;[6] *see also* 5 Bus. & Com. Litig. Fed. Cts. § 58:36 ("A court considering a claim for rescission generally requires an

---

[6] That paragraph of the initial complaint is functionally the same as paragraph 129 of the Second Amended Complaint, ECF No. 29.

10

inadequate remedy at law. A complaint that fails to properly plead an inadequate remedy, or that, on its face, demonstrates that an adequate legal remedy exists, may be subject to dismissal."). Because Plaintiffs barely referenced rescission in their complaints early in the case, only obscurely referencing it in the context of one paragraph of a standalone cause of action for fraudulent inducement that sought actual damages, and not at all pleaded in a sufficiently developed manner, those vague mentions of rescission by Plaintiffs went unaddressed for most of the case.

Only when it became apparent that Plaintiffs could not show, and would not have an expert to testify about, any diminution in the value of their house did they abruptly abandon a damages theory and pivot to rescission as their focus. Under such circumstances, Plaintiffs cannot show they promptly and unambiguously provided NVR notice of their intention to rescind the Purchase Agreement.

### 3. Plaintiffs cannot profit from their own misconduct in frustrating the performance of the contract.

Similarly, there is irrefutable evidence in the record that Plaintiffs barred NVR from their house and knowingly prevented or frustrated NVR's performance under the contract and limited warranty. "A party … cannot take advantage of his or her own wrongful act or set up his or her own default to nullify a contract or to work its forfeiture." 16 Summ. Pa. Jur. 2d Commercial Law § 5:37 (2d ed.) (citing *Tudesco v. Wilson*, 60 A.2d 388, 391 (Pa. Super. 1948)); *New-Com Corp. v. Est. of Gaffney*, 72 B.R. 90, 93 (Bankr. W.D. Pa. 1987) ("Rescission is only available to [a] party who has not caused a breach or default to occur.") (citation omitted).

A constant theme in the testimony of NVR's past and present employees who interacted with Plaintiffs was just how manifestly unreasonable they were to deal with. *E.g.*, Ex. 11 (Shustack Dep.) at 58:6–59:1 (the Rohrbachs were "challenging, to say the least"); Ex. 7 (Taylor Dep.) at 78:13–81:15 (Mrs. Rohrbach was "emotional[ly] abus[ive]" to Taylor); Ex. 19 (Pearson Dep.) at 52:14–53:8 (if Pearson were in the community and got "too close to the property line," he "would be getting the [Plaintiffs'] cell phone in [his] face with the video camera, running up and down the property line,

11

things of that nature"). Plaintiffs produced in discovery videos of themselves confronting NVR contractors and subcontractors in the Hanover Pointe development, yelling obscenities at them, and calling the police on them. Exs. 22-30 (videos of Plaintiffs' confrontations with NVR representatives and police). They had "no trespassing" signs posted all over their property, including signs that specifically stated that NVR could not be on their property without advanced written permission (despite a contractual agreement to the contrary). Ex. 31 (photographs of "no trespassing" signs); Ex. 2 (Purchase Agreement) at ¶8(f). And Mrs. Rohrbach does not dispute that during one interaction with an NVR contractor or subcontractor she attempted to physically assault him with pepper spray. Ex. 3 (A. Rohrbach Dep.) at 276:1–289:3; *see also, id.* at 202:19–22 (confirming calls to police). Behavior of this kind led NVR at one point to temporarily stop scheduling repairs at Plaintiffs' property "for everyone's safety." *Id.*, Ex. 9 (NVR House History Report) at entry 158426.

On Plaintiffs' request, and after repairs had been stalled for those "safety" reasons, NVR arranged for an engineer to go to the Rohrbachs' house and investigate their (unfounded) concerns, including about potential water issues under the house. *Id.*, Ex. 12 (K. Rohrbach Dep.) at 19:11–20:10; Ex. 19 (Pearson Dep.) at 57:1–64:17. But when NVR's representatives and the engineer they had engaged arrived for that inspection, Mrs. Rohrbach turned them away and told them that the meeting had been cancelled. Ex. 20 (video); Ex. 9 (NVR House History Report) at entry 158504.

Despite its understandable concern for the safety of its employees, NVR told Plaintiffs in response to that meeting cancellation that it was "ready to meet with you to review and discuss any remaining concerns" they had about their house and asked them to contact NVR when they were ready to "make the arrangements." Ex. 21 (Jun. 14, 2019 letter from NVR to Plaintiffs). NVR noted that it would "not take any action on [Plaintiffs'] property until we hear from you." *Id.* Instead of contacting NVR to address those issues, Plaintiffs (through their present counsel) responded that

12

NVR was "expressly directed to cease and desist any entry into the Home or its surrounding property." *Id.*, Ex. 36 (Jun. 27, 2019 letter from P. Bryant to NVR's General Counsel).

The Court should not countenance Plaintiffs' efforts to capitalize on their own misconduct in frustrating performance of the underlying contract by engaging in hostilities including physical violence against NVR's representatives. Plaintiffs, by refusing to interact with NVR and barring NVR from their property effectively prevented NVR's performance under the applicable contractual warranty. Plaintiffs should not under those circumstances be permitted to claim entitlement in equity to rescission. *E.g., Gaudiosi v. Mellon*, 269 F.2d 873, 881–82 (3d Cir. 1959) ("No principle is better settled than the maxim that he who comes into equity must come with clean hands … if he violates this rule, he must be denied all relief whatever may have been the merits of his claim.") (internal quotation marks and citations omitted).

### 4. Plaintiffs cannot prove entitlement to rescission on the merits regardless.

More fundamentally, even if Plaintiffs were not otherwise barred from making an equitable request for rescission, they also would not be entitled to rescission on the merits. They can neither show that NVR made a material misrepresentation to them on which they relied in purchasing their house, nor that the parties can be returned to the status quo ante.

### a. No material misrepresentation or justifiable reliance thereon.

To be entitled to rescission, a party must be able to prove that the other party to the contract made a "material misrepresentation" on which they justifiably relied. *Lavecchia*, 2023 WL 1805134, at *1. "A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1186 (Pa. Super. 2005) (citation omitted).

As noted above, the alleged representations at issue here are that

…. Plaintiffs Analia Rohrbach and Kevin Rohrbach had numerous verbal conversations with Mary Taylor both prior to the execution of the Agreement of Sale,

13

and after the Agreement of Sale but prior to the closing, where Ms. Taylor repeatedly praised the **quality of the home construction**. Ms. Taylor also specifically stated that NVR personnel were "highly qualified." She repeated this in the pre-construction meeting with Cody Shustack, whom she praised as one of the most qualified and brightest at NVR. In addition, Defendant routinely advertised on both physical signs and the internet that it was a **quality home builder**. Plaintiffs relied on these representations of **quality home construction** when deciding to purchase the Home.

Ex. 8 (Pls.' Suppl. Resps. to Interrogs.) (emphasis added) at Resp. 2. Plaintiffs suggest that if NVR had not advertised itself to them as a "quality" homebuilder, they would not have purchased their house.[7] But no manufacturer of any product would ever advertise itself as being other than a "quality" producer of whatever underlying product it made, whether that be a house, food product, electronic, or any other good. Nor should a purchaser of such a good advertised to it as being of "quality" be able to unwind the sale simply because they later had buyer's remorse.

This is the commercial puffery courts have held is nonactionable in the context of alleged misrepresentations. *See, e.g., Kovalev v. Lidl US, LLC*, No. CV 21-3300, 2022 WL 17858055, at *20 (E.D. Pa. Dec. 21, 2022) (holding representation that good was "New & Improved" and "High Quality" was nonactionable puffery); *Corsale v. Sperian Energy Corp.*, 412 F. Supp.3d 556, 563 (W.D. Pa. 2019) (holding "vague claim of 'competitive' rates is puffery and, therefore, not actionable"); *Landau v. Virdian Energy PA LLC*, 223 F. Supp.3d 401, 416 (E.D. Pa. 2016) (similar).[8] Moreover, other than their own say-so, Plaintiffs have no evidence that they justifiably relied on these vague representations

---

[7] While Plaintiffs allege they had conversations with Ms. Taylor before and after the sale in which putative representations of "quality" were made, Ms. Taylor has testified that while she would ordinarily "speak to that Ryan Homes's goal is to build a quality home," she does not "go into specific details about certain components of the home." Ex. 7 (Taylor Dep.) at 52:1–54:13. There are also no written representations in the record about which NVR is aware in which NVR made representations to Plaintiffs about the "quality" of Plaintiffs' house.

[8] These kinds of claims of "quality" have been held by "courts across the country …. [to be] non-actionable puffery." *Davidson v. Apple, Inc.*, No. Civ.A. 16-CV-4942, 2017 WL 3149305, at *11 (N.D. Cal. Jul. 25, 2017) (collecting cases); *Koch v. Kaz USA, Inc.*, No. Civ.A. 09-CV-02976, 2011 WL 2610198, at *5 (D. Colo. Jul. 1, 2011) (holding "Durable" and "Quality Construction for Long Lasting Performance" nonactionable puffery; collecting cases); *Heath v. Palmer*, 915 A.2d 1290, 1296 (Vt. 2006) ("We have distinguished statements of fact from statements of opinion in the consumer-fraud context holding that misrepresentations of the former may constitute fraud while misrepresentations of the latter cannot …. Defendants' representations of 'quality construction' and 'exceptional value' unquestionably fall within the category of opinion as subjecting evaluations of workmanship rather than objectively verifiable statements of fact.") (citations omitted).

of "quality" construction in deciding to purchase their house such that had they not been told that NVR builds "quality" houses (which it does) they would have chosen not to buy their house. Absent a material misrepresentation and justifiable reliance on that representation, Plaintiffs cannot demonstrate that they are entitled to the equitable remedy of rescission.

### b. Inability to restore status quo ante.

Plaintiffs also need to show that the Court can set the parties back to square one. *Lavecchia*, 2023 WL 1805134, at *2 ("Rescission is an equitable remedy. It is available only when it is possible to restore the status quo ante. Sometimes, it is simply not possible to turn back the clock, and the party who is [the] subject of the fraud is left to an action for damages."). It is unclear how Plaintiffs propose the Court do so.

For example, when Plaintiffs apparently became dissatisfied with their house, they chose to not move out or otherwise take action that would indicate their belief that the sale contract had been voided. Instead, they started off by making warranty claims under the parties' contract documents, inducing NVR to perform, and continued to live in the house (with the benefit of living the house) for more than four years. They have also made changes to the original, as-built construction of the house in the time that they have lived in it: for example, installing an epoxy finish on the garage floor, which finish their proposed expert witness now apparently believes is a "construction defect" caused by Plaintiffs, and new controls for the house's heating and cooling system. Ex. 3 (A. Rohrbach Dep.) at 75:6–14; Ex. 13 (Patarcity Dep.) at 108:15–109:8. Yet another unmanageable part of attempting to restore the parties to the status quo ante is that Plaintiffs apparently seek "return of the principal amounts paid for the sale of the Home." *Id.*, Ex. 8 (Pls.' Suppl. Resps. to Interrogs.) at Resp. 1. Implicit in that response is that the house is encumbered by a mortgage, apparently with Fulton Bank, which is not a party to this litigation. *Id.*, Ex. 3 (A. Rohrbach Dep.) at 178:8–179:21. It is therefore unclear whether and how the Court could restore the status quo ante and return the parties to the positions

15

they were in prior to entry of the sale contract. In those circumstances, rescission would not be an appropriate remedy.

### c.    No proof of harm; insufficient evidence of restitution costs.

Finally, there is, again, no evidence in the record one way or the other regarding alleged diminution or increase in the value of the house since Plaintiffs purchased it because Plaintiffs never disclosed an expert to estimate such diminution or increase in the value of the house. They have identified no issues with their house that are not covered by the NVR limited warranty and their putative expert confirms that each such issue can be fixed; he just wrongly assumed Plaintiffs would necessarily need to pay for those repairs in reaching his vague conclusions about the supposed "cost and inconvenience" Plaintiffs would endure from the repairs because he was not told about the limited warranty. Ex. 10 (Limited Warranty); Ex. 13 (Patarcity Dep.) at 19:4–14; 82:15–19; 120:15–121:3; 124:11–126:22; Ex. 32 (Patarcity Dep. Ex. 8).

Although the damage or prejudice Plaintiffs must show to obtain rescission need not necessarily be monetary, if the prejudice they now allege is not the diminution in value in the house they have been focused on since the outset of this case, *e.g.*, Second Am. Compl., ¶¶ 87, 88, 105, they need to show something more than mere generalized hindsight displeasure with the purchase of their house which is covered by a warranty and about issues that can indisputably be fixed. *Cf. Lakeside Forge Co. v. Freedom Oil Wks.*, 109 A. 216, 217–18 (Pa. 1920) (reliance on misstatement must be shown to have been "detrimental"; misstatements resulting in no damage or inconvenience to adverse party will not justify rescission; allegedly false statement "resulted in a positive advantage to defendant of hundreds of dollars; so the defense is without merit in law or equity").

And even if rescission were not inappropriate for one of the myriad reasons above, it is also similarly dubious whether Plaintiffs can demonstrate the measure of the restitution they seek if they prevail in obtaining rescission. The only "evidence" of which NVR is aware in the record with respect

16

to damages and restitution is the supplemental response Plaintiffs supplied (without objection, in response to the Court's Order sanctioning them, ECF No. 51),[9] to NVR's first interrogatory stating:

> 1. Itemize and describe in detail each element of damages to which YOU claim YOU are entitled to in this lawsuit or as a result of Defendant NVR's alleged actions, state the basis for YOUR answer, and IDENTIFY all DOCUMENTS PERTAINING TO such damages or elements thereof.
>
> RESPONSE: Plaintiffs seek compensatory damages for the repair of their home or rescission of the sale. In addition, Plaintiffs seek attorneys fees and costs under the UTPCPL, treble damages, and damages for the diminished value of the Home as a result of the construction defects.
>
> Supplemental Response: Plaintiffs seek recission of the sale of the Home, which would necessitate the return of the principal amounts paid for the sale of the Home, plus the following out of pocket costs: $16,502 in real estate taxes; HOA fees of $3060; Closing costs of $13,086.65; Attorneys fees of $58,000; Expert fees of $12,000. The attorneys' fees and expert fees will increase throughout the litigation. While the main relief Plaintiffs seek is recission of the sale, in the event that Plaintiffs seek alternative relief in the form of monetary damages Plaintiffs will produce an expert report regarding the cost to repair the defects in the Home by October 24, 2022, in accordance with the case management order.

Ex. 8 (Pls.' Supp. Resps. to Interrogs.) at Resp. 1; *see also id.* at Resp. 6. The only other place Plaintiffs have attempted to support their damages and restitution figures is in their Rule 26(a) disclosures, which similarly only came after they were sanctioned for failing to provide that information and contained even less detail. Ex. 36 (Pls.' Rule 26(a) disclosures). NVR does not believe there is any documentary evidence of record to support the figures above, and courts have noted that such unsupported interrogatory responses should be "treated like an affidavit on summary judgment," and that "conclusory affidavits lack probative value." *McKenny v. United States*, 937 F.3d 1291, 1302-03 (11th Cir. 2020) (holding that interrogatory response at issue about figures related to potential tax liability would not have created issue of material fact because it was "conclusory, as it contains no explanation or details as to how the McKennys arrived at their respective tax liability numbers for the years in

---

[9] One of the Court's other directives in that Order and a subsequent Order, ECF No. 53, that Plaintiffs pay a monetary sanction to NVR for discovery abuses remains unsatisfied to this day. Plaintiffs remain in contempt of those Orders.

question"). Plaintiffs also failed to identify a single document in response to this interrogatory's request that they do so that would support the restitution figures contained in their answer. Consequently, Plaintiffs have failed to produce sufficient evidence of their sought restitution costs such that their request for them should survive summary judgment.

### C. Plaintiffs have abandoned their non-rescission claims.

Plaintiffs have long been strategically ambiguous about what it is they are seeking as relief in this case. The Second Amended Complaint, ECF No. 29, focuses principally on obtaining actual damages and other relief for the supposed "diminution in value" in their house. In just one paragraph of the Second Amended Complaint (¶ 129) and the header of Count IV ("Fraudulent Inducement – Recission [sic]") do Plaintiffs obliquely refer to rescission as a potential remedy. At the last hearing, they stated that they were seeking rescission and actual damages "in the alternative" to one another. Ex. 1 (N.T. 9/29/22) at 18:20–19:6. In the supplemental responses to interrogatories the Court ordered Plaintiffs to provide after that hearing, they said that "While the main relief Plaintiffs seek is recission of the sale, in the event that Plaintiffs seek alternative relief in the form of monetary damages Plaintiffs will produce an expert report regarding the cost to repair the defects in the Home by [the deadline to do so]." Ex. 8 (Pls.' Suppl. Resps. to Interrogs.) at Resp. 1. But no such damages expert was disclosed, and Plaintiffs abandoned claims for actual damages.

Plaintiffs have made clear they do not intend to proceed on their non-rescission claims. Those claims should be dismissed.

### D. Summary judgment would also be alternatively warranted on Plaintiffs' remaining claim(s) because they will not attempt to, and cannot, prove damages.

Counts I and II are withdrawn and should be dismissed with prejudice. Counts III & IV also fail.

Plaintiffs have elected rescission as their remedy, and once such an election is made, actual damages are not recoverable. Demonstrating damages is an essential element of their fraud and

18

UTPCPL claims. 73 P.S. § 201-9.2 (UTPCPL (Count III, here) requires a private plaintiff to prove "ascertainable loss of money or property, real or personal," as a consequence of a defendant's allegedly deceptive conduct); *McAllister v. Royal Caribbean Cruises, Ltd.*, No. CIV.A. 02-CV-2393, 2003 WL 23192102, at *5 (E.D. Pa. Sept. 30, 2003) (claim under Pennsylvania law for fraudulent inducement (Count IV, here) requires "damages to the plaintiff as a proximate result of reliance on the misrepresentation"). There has been more than "adequate time for discovery," yet Plaintiffs have failed "to make a showing sufficient to establish the existence of an element essential to [their] case," *i.e.*, their damages, and this "complete failure of proof … renders all other facts immaterial" on these claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33 (1986).

Plaintiffs have abandoned all efforts to establish actual damages: they did not identify them in their discovery disclosures, produced nothing in discovery to document them, and did not obtain the damages expert about which the Court inquired at the last hearing. Ex. 37 (Pls.' Initial Disclosures); Ex. 8 (Pls. Suppl. Resps. to Interrogs.) at Resps. 1 & 6; Ex. 1 (N.T. 09/29/22) at 18:1–20:8 ("Where's your damages expert?"). Summary judgment on both remaining counts is warranted because Plaintiffs cannot prove damages.

### E.  Likewise, and in the alternative, Plaintiffs cannot prove their case on the merits.

To the extent the Court further entertains Plaintiffs' UTPCPL and/or fraudulent inducement claims on the merits, both of those claims fail for several other reasons.

#### 1.  Plaintiffs cannot show a material misrepresentation on which they justifiably relied or "ascertainable loss." Thus, their UTPCPL claim would fail.

If Plaintiffs' UTPCPL claim is deemed not to have been forgone, it would fail because Plaintiffs can show neither that a material misrepresentation was made to them on which they justifiably relied, nor that any such material misrepresentation caused them an "ascertainable loss."

First, to establish UTPCPL claim, a plaintiff must show a material misrepresentation of an existing fact on which they justifiably relied. *E.g*, *DeSimone v. U.S. Claims Servs., Inc*, No. Civ.A. 19-

19

6150, 2020 WL 1164794, at *4 (E.D. Pa. Mar. 11, 2020) (citation omitted). For the reasons outlined above (at 13-15), the alleged statements related to "quality" home construction are nonactionable puffery.

Second, Plaintiffs also need to prove that they suffered an "ascertainable loss." *E.g*, *In re Rutter's Inc. Data Sec. Breach Litig*, 511 F. Supp.3d 514, 541 (M.D. Pa. 2021) ("To allege an ascertainable loss, the plaintiff must be able to point to money or property that he would have had but for the defendant's fraudulent actions.") (internal quotation marks and citation omitted). "Only an actual, non-speculative, identifiable loss constitutes an ascertainable loss for purposes of the UTPCPL." *In re Marshall*, 613 B.R. 194, 214 (Bankr. E.D. Pa. 2020) (citation omitted). Plaintiffs have, again, abandoned any effort to prove their alleged harm and thus cannot show an ascertainable loss.

### 2.  Plaintiffs cannot prove their fraudulent inducement claim.

To show that a party was fraudulently induced to a contract, they must show "(1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance." *Gregg v. Ameriprise Fin., Inc*, 245 A.3d 637, 645–46 (Pa. 2021) (citation omitted). For the reasons explained above (at 13-15), Plaintiffs again cannot show a material misrepresentation or justifiable reliance thereon. This claim fails for those reasons alone. It also fails because, again, Plaintiffs have no proof of damages. Plaintiffs also cannot show that any claim of "quality" home construction was false, and made with NVR's knowledge of the falsity or reckless disregard of its veracity, nor can they show that NVR intended to mislead them about "quality" construction to induce their entry into the sale agreement. This claim therefore also fails and merits judgment in NVR's favor.

## IV.     <u>CONCLUSION</u>

For those reasons, NVR respectfully requests that summary judgment be entered in its favor.

Respectfully submitted,

By:     */s/ Jonathan P. Boughrum*
         Jonathan P. Boughrum, Bar # 91019
         Michael C. Witsch, Bar #313884
         Armstrong Teasdale LLP
         2005 Market St., 29th Fl.
         One Commerce Sq.
         Philadelphia, PA 19103
         Telephone:   267.780.2012
         jboughrum@atllp.com
         mwitsch@atllp.com

DATED: April 24, 2023