IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN M. ROHRBACH and<br>ANALIA M. ROHRBACH, h/w<br><br>Plaintiffs,<br><br>v.<br><br>NVR, INC. (t/a RYAN HOMES),<br>JOHN DOES 1–10, and<br>JOHN DOE CORP. 1–10<br><br>Defendants. | CIVIL ACTION NO. 19-5847 |

MEMORANDUM OPINION

Rufe, J.                                                                                                       March 29, 2024

Plaintiffs Kevin and Analia Rohrbach bring this action against Defendants NVR, Inc. (t/a Ryan Homes) and other unnamed individuals and entities involved in constructing an allegedly defective home Plaintiffs purchased in 2018. Before the Court are cross-motions for summary judgment filed by the Rohrbachs and NVR. For the reasons set forth below, both motions will be denied.

I. **BACKGROUND**

    A. **Relevant Facts**[1]

At some point before November 2018, the Rohrbachs began discussing the potential purchase of a newly constructed home with Mary Taylor, a sales representative for NVR.[2]

---

[1] The parties did not submit a joint stipulation of material facts. Instead, Plaintiff submitted the "Relevant Facts" section in its brief in support of summary judgment (which is substantively identical to the "Relevant Facts" section in its response in opposition to Defendant's cross-motion). Defendant submitted the "Undisputed Material Facts and Procedural History" section in its brief in support of its own motion for summary judgment, while separately submitting a "Counterstatement of Facts" in its response in opposition to Plaintiffs' cross-motion. The Court draws the factual background from the uncontested portions of each statement of facts and *appropriate evidence* introduced by the parties related to the claims. The Court will not entertain evidence in the form of email communications between counsel.

[2] Def.'s Mot. Summ. J., Ex. 7, Taylor Dep. Tr. at 52 [Doc. No. 74-9].

Ms. Taylor became the Rohrbachs' principal point of contact during the pre-contracting period.[3] On November 6, 2018, the parties executed a Purchase Agreement for the construction and purchase of a new home in the Hanover Pointe development in Pottstown, Pennsylvania.[4]

The Purchase Agreement (the "Agreement") facilitated the sale of the "Property" for a total purchase price of $358,300, defined to include the home, the plot of land upon which the home was to be constructed, and certain appliances and finishes.[5] The Agreement explicitly disclaims all implied warranties other than the limited warranty conveyed in the terms, which states that NVR's "obligations are limited solely to the repair or replacement of [a] defective component," and, "[i]f any defect is discovered during the applicable warranty period, [NVR] shall have the exclusive right to determine whether the defect shall be corrected by repair, adjustment, or replacement."[6] NVR reserved its right to access the property after settlement to make repairs, and the Agreement contemplated that the Rohrbachs would cooperate with NVR in providing access as necessary for such repairs.[7]

The Rohrbachs contend that Ms. Taylor and others at NVR misrepresented the quality of NVR's constructed homes during "numerous verbal conversations" before and after the execution of the Agreement (but before closing), including by repeatedly praising the quality of the home construction.[8] According to the Rohrbachs, Ms. Taylor told them that "NVR personnel

---

[3] Def.'s Mem. Supp. Mot. Summ. J. at 2 [Doc. No. 74-1]; Pls.' Mem. Supp. Mot. Summ. J. at 2 [Doc. No. 73-1].

[4] Pls.' Mot. Summ. J., Ex. D [Doc. No. 73-5] (Pennsylvania Purchase Agreement).

[5] *Id.* ¶ 1 (defining the "Property" purchased in the Agreement as including the lot, home, and specification options selected in the Master Selection Sheet).

[6] *Id.* ¶ 6 (emphasis omitted).

[7] *Id.* ¶ 8(d).

[8] Pls.' Mot. Summ. J., Ex. B ¶ 2 [Doc. No. 73-3] (Plaintiffs' interrogatory responses); Pls.' Mot. Summ. J., Ex. I, Analia Rohrbach Dep. Tr. at 137 [Doc. No. 73-10] ("We were told over and over and over the house would be . . . the highest quality . . . .").

2

were 'highly qualified'" and, during a pre-construction meeting with Cody Shustack, the NVR Project Manager who was overseeing Hanover Pointe, Ms. Taylor praised Mr. Shustack "as one of the most qualified and brightest at NVR."[9] During her deposition, Ms. Rohrbach recalled that "Mr. Shustack liked to say a phrase that we still remember[,] that . . . they will go through with a fine-toothed comb . . . to make sure there [were] no issue[s] anywhere. . . . And it was like highest quality."[10] Ms. Rohrbach further recounted during her deposition that the home was sold to them as a "luxury house, highest finish, fine-toothed comb quality, [and] superb . . . ."[11] Finally, the Rohrbachs refer to advertising on signs and online that NVR was a "quality home builder."[12]

Ms. Taylor testified that her general practice was to "speak to [the fact] that [NVR's] goal is to build a quality home" and that NVR's employees receive information from NVR "regarding the quality of the product and how to sell the houses," but she did not have a practice of discussing "specific details about certain components of the home . . . because that is more production based and more knowledge based on their end."[13] Although the Rohrbachs contend that Mr. Shustack was not, in fact, one of the "most qualified" project managers, NVR responds by citing Mr. Shustack's deposition testimony stating that he had undergone significant and rigorous training and coursework to qualify for his promotion to project manager.[14]

---

[9] Pls.' Mot. Summ. J., Ex. B ¶ 2 [Doc. No. 73-3].

[10] Pls.' Mot. Summ. J., Ex. I, Analia Rohrbach Dep. Tr. at 137–38 [Doc. No. 73-10].

[11] *Id.* at 138–39.

[12] Pls.' Mot. Summ. J., Ex. B ¶ 2 [Doc. No. 73-3] (Plaintiffs' interrogatory response describing advertisements).

[13] Def.'s Mot. Summ. J., Ex. 7, Taylor Dep. Tr. at 53–54 [Doc. No. 74-9].

[14] *Compare* Pls.' Mem. Supp. Mot. Summ. J. at 12 [Doc. No. 73-1] (citing Pls.' Mot. Summ. J., Ex. C, Shustack Dep. Tr. at 31–32 [Doc. No. 73-4]) *with* Def.'s Resp. Opp'n Mot. Summ. J. at 16 n.7 [Doc. No. 82] (citing Def.'s Resp. Opp'n Mot. Summ. J., Ex. 8, Shustack Dep. Tr. at 24–27, 29–30 [Doc. No. 82-8]).

In April 2019, the Rohrbachs closed on the deal and moved into their newly constructed home.[15] Within the first month and a half of living in their home, the Rohrbachs made over three dozen complaints to NVR.[16] Tensions escalated between the Rohrbachs and NVR's representatives because of what the Rohrbachs believed were defects in the home's construction. The Rohrbachs have produced an expert report from Randy Patarcity, an engineer, who visited the property and identified defects which he concluded "are the result of poor and substandard workmanship by the builder, Ryan Homes and [its] subcontractors," including cracks in the home's foundation and a defective joint between the front porch and a corner of the home.[17] NVR has produced its own engineering expert, Stephen Mohan, who identified many of the same alleged defects but concluded that "most . . . are aesthetic concerns and are not structural deficiencies and will not reduce the service life of the dwelling."[18] The Rohrbachs have continued to live in the home during this litigation.[19]

### B. Procedural History

On November 14, 2019, the Rohrbachs filed this action against NVR in the Pennsylvania Court of Common Pleas for Montgomery County, alleging that NVR had fraudulently sold them a defective home.[20] NVR removed the case to this Court on the basis of diversity jurisdiction.[21] The Rohrbachs initially asserted claims for breach of contract, fraudulent inducement, breach of implied warranty, negligence, negligent supervision, and violation of the Pennsylvania Unfair

---

[15] Pls.' Mem. Supp. Mot. Summ. J. at 2–3 [Doc. No. 73-1]; *see also* Def.'s Mot. Summ. J., Ex. 3, at 36 [Doc. No. 74-5].

[16] *See generally* Def.'s Mot. Summ. J., Ex. 9 [Doc. No. 74-11] (NVR House History Report).

[17] Pls.' Mot. Summ. J., Ex. H, at 10–11 [Doc. No. 73-9] (Patarcity Expert Report).

[18] Pls.' Mot. Summ. J., Ex. G, at 7 [Doc. No. 73-8] (Mohan Report).

[19] Def.'s Mem. Supp. Mot. Summ. J. at 5 n.4 [Doc. No. 74-1]; Pls.' Resp. Opp'n Summ. J. at 11 [Doc. No. 81-2].

[20] Notice of Removal, Ex. A [Doc. No. 1].

[21] *Id.*

Trade Practices and Consumer Protection Law ("UTPCPL").[22] On June 24, 2020, upon NVR's partial motion to dismiss, the Court dismissed the Rohrbachs' fraudulent inducement and UTPCPL claims with prejudice, and their negligence claims without prejudice.[23] The Rohrbachs filed an Amended Complaint, after which NVR filed a second motion to dismiss.[24]

While NVR's second motion to dismiss was pending, the Third Circuit issued a precedential decision in *Earl v. NVR, Inc.*, which addressed claims similar to those brought in this case.[25] On June 28, 2021, pursuant to the Third Circuit's guidance in *Earl*, this Court vacated its prior decision and granted the Rohrbachs leave to file an amended complaint with respect to the UTPCPL and fraudulent inducement claims.[26] On July 9, 2021, the Rohrbachs filed a Second Amended Complaint, which asserted four claims: breach of contract, breach of implied warranty, violation of the UTPCPL, and fraudulent misrepresentation.[27]

## II.  LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A fact is material if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is genuine if the evidence presented is such that a reasonable jury could return a verdict for the nonmoving party.[29] In evaluating a summary judgment motion, a court "must view the

---

[22] Notice of Removal, Ex. A ¶¶ 79–127 [Doc. No. 1]; 73 Pa. Stat. § 201-3(a).

[23] Mem. Op. & Order [Doc. Nos. 10–11].

[24] Am. Compl. [Doc. No. 13]; Def.'s Mot. Dismiss [Doc. No. 15].

[25] *Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021).

[26] *Rohrbach v. NVR, Inc.*, 545 F. Supp. 3d 237 (E.D. Pa. 2021).

[27] Second Am. Compl. [Doc. No. 29].

[28] Fed. R. Civ. P. 56(a).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[30] When considering cross-motions for summary judgment filed by both parties, a court must evaluate each party's motion individually.[31]

A court may not weigh the evidence or make credibility determinations at the summary judgment stage.[32] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[33] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[34] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[35] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate.[36]

### III.  DISCUSSION

The Court first addresses two threshold matters. Plaintiffs' briefings indicate that they are seeking damages under the UTPCPL (Count III) in addition to the equitable remedy of rescission for the fraudulent inducement claim (Count IV). NVR asserts that, because the Rohrbachs have elected rescission as their remedy, they are bound by that decision and are barred from pursuing

---

[30] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[31] *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008) (citation omitted).

[32] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[34] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citation omitted).

[35] *Anderson*, 477 U.S. at 249–50.

[36] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

the inconsistent remedy of damages.[37] However, a claim for damages under the UTPCPL is a statutory one, based on a theory of fraud; it does not arise from the common law of contracts.[38] The Court holds that the Rohrbachs are not barred from pursuing both categories of relief.

NVR argues that the Rohrbachs cannot recover because they have not produced a damages expert, but in doing so, NVR makes repeated and spurious references to observations this Court made during a status hearing requested by the parties to address ongoing discovery disputes. Below are NVR's misleading references to the Court's statements during that hearing:

- "At the last hearing in September 2022, the Court cautioned Plaintiffs that this is an 'expert case.' . . . In response, Plaintiffs' counsel at least implied that Plaintiffs would obtain a damages expert, . . . but they did not do so."[39]

- "Plaintiffs . . . did not obtain the damages expert about which the Court inquired at the last hearing. . . . ('Where's your damages expert?')."[40]

- "Plaintiffs never obtained a damages expert to measure their purported financial harm. . . . (The Court: 'Where's your damages expert?') . . . ."[41]

- "When the Court asked Plaintiffs, 'Where's your damages expert?,' . . . Plaintiffs plainly indicated they would hire one but did not later do so and, as detailed elsewhere, only specifically abandoned any effort to prove such actual damages in later email correspondence between counsel."[42]

---

[37] Def.'s Mem. Supp. Mot. Summ. J. at 18 [Doc. No. 74-1].

[38] *Metz v. Quaker Highlands, Inc.*, 714 A.2d 447, 450 (Pa. Super. Ct. 1998) (affirming trial court's grant of rescission and damages under the UTPCPL, as "the unequivocal language of the UTPCPL . . . makes no exclusion where rescission of a contract is granted as well"); *see also Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 401 (3d Cir. 2004) ("[T]reble damages may be awarded in a rescission case." (citing *Metz*, 714 A.2d 447)); *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996) ("The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise.").

[39] Def.'s Mem. Supp. Mot. Summ. J. at 19 [Doc. No. 74-1] (internal citations omitted) (quoting Def.'s Mot. Summ. J., Ex. 1, Hr'g Tr. at 20, 18 [Doc. No. 74-3]).

[40] Def.'s Mem. Supp. Mot. Summ. J. at 19 [Doc. No. 74-1] (internal citations omitted) (quoting Def.'s Mot. Summ. J., Ex. 1, Hr'g Tr. at 18–20 [Doc. No. 74-3]).

[41] Def.'s Resp. Opp'n Mot. Summ. J. at 18 [Doc. No. 82] (internal citations omitted) (quoting Def.'s Mot. Summ. J., Ex. 1, Hr'g Tr. at 18 [Doc. No. 74-3]).

[42] Def.'s Reply Supp. Mot. Summ. J. at 4 n.1 [Doc. No. 83] (internal citations omitted) (quoting Def.'s Mot. Summ. J., Ex. 1, Hr'g Tr. at 18–20 [Doc. No. 74-3]).

In the interest of absolute clarity, the Court provides below a more complete illustration of what was said at the September 29, 2022 status hearing:

> THE COURT: You got an expert report, didn't you?
> MR. BOUGHRUM: Well, I disagree it qualifies as an expert report, but that's an issue for Your Honor in the future.
> THE COURT: I see, okay. But you think you gave him an expert report?
> MR. BRYANT: I certainly do, Your Honor.
> THE COURT: Was it on liability, or damages, or both?
> MR. BRYANT: It was on liability.
> THE COURT: Where's your damages expert?
> MR. BRYANT: Well, we've asked the Court for rescission in this matter, which is the first issue that we—the first relief that we're seeking. And the expert that we have, the hydrologist, is going to opine effectively that the home has to be—that the home is unsafe, and will continue to be unsafe.
> . . . .
> MR. BRYANT: Your Honor, we have identified those, in the alternative. Our main—the main relief we're seeking is rescission. I mean, obviously, diminution of value, punch list items, all that goes away if we are given the relief of rescission.
> And certainly as to the other damages we seek under the Trade Practices claim, it's attorney's fees. . . .
> . . . .
> THE COURT: . . . So you've got alternative remedies to make your clients whole, if you can, that's what you're talking about now . . . .
> . . . .
> MR. BRYANT: . . . [W]e've engaged two different experts. . . .[43]

Under no circumstances will this Court tolerate the deceptive misappropriation of its prior communications with the parties. Had NVR included the full context of those quotes from the hearing transcript, it would be clear that the Court was discussing with Plaintiffs' counsel the general need to substantiate damages—with or without an expert. To be clear, and as the Court noted at the hearing, the Rohrbachs bear the burden at trial of substantiating any equitable award of monetary costs or expenses even if pursuant to a grant of rescission.[44] However, the Court is

---

[43] Hr'g Tr., Sept. 29, 2022, at 17–20 [Doc. No. 63].

[44] *See id.* at 31–32.

8

not persuaded that the absence of a damages expert at this stage dictates a grant of summary judgment in NVR's favor. The Court will review each relevant claim on the merits.

### A. Count III: UTPCPL

Both parties move for summary judgment on the UTPCPL claim. NVR contends that the statements the Rohrbachs allege to be fraudulent—specifically, the marketing representations and oral statements from NVR's agents about the "quality" of NVR's homes and the "highly qualified" credentials of its project manager—are mere commercial puffery which are not actionable under the UTPCPL. NVR also asserts that the Rohrbachs have not pointed to sufficient evidence demonstrating that, in purchasing their home, they justifiably relied on the alleged misrepresentations. The Rohrbachs contend that they are entitled to summary judgment because there is no genuine dispute that NVR engaged in deceptive or misleading conduct, or that the Rohrbachs relied upon those statements.

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[45] "A private cause of action exists under the UTPCPL where a person 'purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of' a defendant's use . . . of an unlawful practice prohibited by the statute."[46] A plaintiff bringing a claim under the UTPCPL must show: (1) the purchase or lease of goods or services primarily for a personal, family, or household purpose; (2) an ascertainable loss of money or property; (3) that the loss occurred as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by the UTPCPL; and (4) justifiable

---

[45] 73 Pa. Stat. § 201-3(a).

[46] *Hamburg v. Santander Bank, N.A.*, No. 16-5142, 2016 WL 7404482, at *4 (E.D. Pa. Dec. 21, 2016) (quoting 73 Pa. Stat. § 201-9.2).

reliance upon the unfair or deceptive business practice when making the purchasing decision.[47] As a remedial statute "designed to thwart fraud in the statutory sense," the UTPCPL "is to be construed liberally to effect its object of preventing unfair or deceptive practices."[48]

The Pennsylvania Supreme Court has long recognized that broad statements which create an impression of exaggeration or overstatement may be deemed non-actionable.[49] "In distinguishing between actionable claims and mere puffery, courts have differentiated between claims that are specific and measurable and those that constitute exaggerated advertising, blustering, and boasting or vague and general claims of superiority."[50] However, "[s]tate and federal courts are united in the principle that the determination as to whether a statement is deemed puffery is a question of fact to be resolved by the finder of fact except in the unusual case where the answer is so clear that it may be decided as a matter of law."[51]

Viewing the evidence in the light most favorable to the Rohrbachs, the alleged representations by NVR's agents regarding the quality of its homes are not so clearly puffery, nor the evidence of the Rohrbachs' alleged reliance on those statements so indisputable, that both issues are resolvable by the Court in NVR's favor as a matter of law.[52] Nor is it indisputable that,

---

[47] *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021).

[48] *Commonwealth v. Monumental Props., Inc.*, 329 A.2d 812, 817 (Pa. 1974).

[49] *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018) (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

[50] *Catena v. NVR, Inc.*, No. 20-160, 2023 WL 128348, at *3 (W.D. Pa. Jan. 9, 2023) (cleaned up) (citation omitted).

[51] *Golden Gate*, 194 A.3d at 1024 (citing cases).

[52] *See Catena*, 2023 WL 128348, at *3–4 (holding that evidence was sufficient for jury to determine that NVR's marketing statements about a "luxury home" and "quality architecture, timeless design, and beautiful finishes" were not puffery); *Earl v. NVR, Inc.*, No. 20-505, 2022 WL 1774124, at *8 (W.D. Pa. Mar. 18, 2022) (holding that the issue of whether NVR's statements regarding a "luxury home" were puffery was "fraught with factual determinates" and "belongs in the hands of the jury"). The Court takes particular notice of Ms. Rohrbach's deposition testimony recounting statements from the development's project manager that the home would be a "superb" and "luxury house" of the "highest finish," and that all specifications would be gone through with a "fine-toothed comb . . . ." Pls.' Mot. Summ. J., Ex. I, Analia Rohrbach Dep. Tr. at 137–39 [Doc. No. 73-10].

drawing all inferences in favor of NVR, the Rohrbachs are entitled to summary judgment based on their largely testimonial evidence of NVR's misstatements. These are factual disputes, in substantial part arising from witness and expert testimony from both parties, which are most appropriately resolved by a jury at trial.

Regarding the remaining element as to ascertainable losses, the Court holds that the Rohrbachs have met their burden at the summary judgment stage of establishing a genuine dispute regarding an ascertainable loss of money or property. The Rohrbachs have introduced the expert report and testimony of Mr. Patarcity as to the alleged defects,[53] and present a theory that their losses were equivalent to various ascertainable expenditures necessary to effectuate what they present as a fraudulently induced purchase of the property.[54] Upon a careful review of the present record, the Court will deny summary judgment as to both parties on the UTPCPL count.

### B. Count IV: Fraudulent Inducement – Rescission

A claim of fraudulent misrepresentation under Pennsylvania law requires a plaintiff to show: "(1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance."[55]

NVR contends that there is no genuine dispute of material fact regarding the alleged material misrepresentations or the Rohrbachs' reliance upon such misrepresentations. The

---

[53] The Court has denied by separate Order NVR's motion to exclude Mr. Patarcity's testimony.

[54] Pls.' Resp. Opp'n Summ. J. at 17–18 [Doc. No. 81-2] (citing *Metz*, 714 A.2d at 449–50); *see also Star v. Rosenthal*, 884 F. Supp. 2d 319, 332 (E.D. Pa. 2012) ("Pennsylvania courts have not hesitated to permit claims under the UTPCPL involving transactions in real property—even where plaintiffs claimed only economic losses." (citing cases)).

[55] *Gregg*, 245 A.3d at 645–46 (citing *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).

Rohrbachs contend that NVR indisputably made fraudulent misrepresentations upon which the Rohrbachs relied.

There are numerous genuine factual disputes as to each of the elements of the Rohrbachs' fraudulent inducement claim, whether viewing the evidence in a light most favorable to NVR or in a light most favorable to the Rohrbachs. As previously stated, NVR is not entitled to summary judgment based on a theory that its agents' alleged representations were merely non-actionable puffery. That is an essentially factual dispute most appropriately resolved by the factfinder.[56] Likewise, the knowledge and state of mind of NVR's representatives in making the alleged misrepresentations, and whether the Rohrbachs justifiably relied on the alleged misstatements, are each tied up in disputed facts surrounding when the alleged statements were made and the factors which went into the Rohrbachs' ultimate decision to enter into the Agreement—another set of questions most properly addressed by a jury at trial.

1. *Timely Election of Rescission*

NVR's remaining arguments go to whether rescission is available to the Rohrbachs as a matter of law. First, NVR contends that the Rohrbachs did not make a prompt and unambiguous claim for rescission of the Agreement, therefore the fraud claim should be dismissed as waived.[57] NVR asserts that the Rohrbachs, by submitting complaints and repair requests to NVR upon moving into the home, knowingly availed themselves of their contractual remedies and therefore did not clearly convey an intent to rescind the Agreement.[58] The Court disagrees.

---

[56] *See Catena*, 2023 WL 128348 at *3–4; *Earl*, 2022 WL 1774124 at *8.

[57] *See* Def.'s Mem. Supp. Mot. Summ. J. at 9 [Doc. No. 74-1] (citing 16 Summ. Pa. Jur. 2d Commercial Law § 5:40 (2d ed.) ("[T]o be effective, a notice for the rescission or termination of a contract must be clear and unambiguous and convey an unquestionable purpose to insist on the rescission.")).

[58] *Id.* at 10.

The record evidence and filings in this case are sufficient to establish that NVR was fairly put on notice that rescission was a remedy the Rohrbachs consistently pursued. The initial complaint filed in the Commonwealth Court referred to rescission (albeit briefly) in connection with the fraudulent inducement claim.[59] More important, the operative Second Amended Complaint states in unambiguous terms that "Plaintiffs demand[ ] that the Agreement and related agreements be rescinded" pursuant to the claim of fraudulent inducement.[60] Plaintiffs' counsel stated in a hearing before this Court on September 29, 2022, that the Rohrbachs were pursuing rescission as "the first relief" and the "main relief," while also pursuing damages under the UTPCPL.[61] Lastly, in Plaintiffs' supplemental responses to NVR's revised first set of interrogatories dated October 3, 2022, the Rohrbachs stated explicitly that they seek rescission of the sale of their home.[62] The Court will not bar the Rohrbachs from continuing to pursue the equitable remedy of rescission now.[63]

2. *Return to Status Quo Ante*

Next, NVR contends that rescission is not possible in this case because of improvements the Rohrbachs made to the house, citing the rule that rescission "is available only when it is possible to restore the status quo ante."[64] It is true that under Pennsylvania law, rescission "should be 'granted only where the parties to a contract can be placed in their former positions

---

[59] Notice of Removal, Ex. A, at 14 [Doc. No. 1] ("Fraudulent Inducement – Recission").

[60] Second Am. Compl. ¶ 129 [Doc. No. 29].

[61] Hr'g Tr., Sept. 29, 2022, at 18–19 [Doc. No. 63].

[62] Def.'s Mot. Summ. J., Ex. 8 ¶ 1 [Doc. No. 74-10].

[63] Plaintiffs inappropriately rely upon a memorandum submitted during settlement discussions before Magistrate Judge Carol Sandra Moore Wells. *See* Pls.' Resp. Opp'n Mot. Summ. J. at 9–10 [Doc. No. 81-2]; Pls.' Resp. Opp'n Mot. Summ. J., Ex. B [Doc. No. 81-4]. The Court will not consider those materials or statements in adjudicating the parties' present motions, nor will such materials be admissible at trial.

[64] Def.'s Mem. Supp. Mot. Summ. J. at 15 [Doc. No. 74-1] (quoting *Lavecchia v. Fleming*, 668 F. Supp. 3d 335, 337 (E.D. Pa. 2023) (order denying motion to amend judgment)).

with regard to the subject matter of the contract.'"[65] However, the case NVR cites, *Lavecchia v. Fleming*, involved facts distinguishable from this case. After a bench trial, the court held in *Lavecchia* that rescission was unavailable to the plaintiff homeowners, notwithstanding a finding of fraud, because they had made significant improvements to the home totaling $50,378 in costs.[66] Those improvements included a complete replacement of the roof, the removal of drywall from the ceiling and walls in multiple areas, complete mold remediation, and removing and covering two skylights on the roof.[67]

      Here, NVR points to the Rohrbachs' decisions to install an epoxy finish on the garage floor and "new controls for the house's heating and cooling system."[68] The Rohrbachs respond that the conversion of "an old thermostat to a remote Nest thermostat" is not a material change to the property, and it would not be prohibitively difficult or expensive to remove an epoxy finish.[69] Moreover, the Rohrbachs contend that they have chosen to "live[ ] with the defects as they cannot afford to have the Home fixed."[70] The Court agrees with the Rohrbachs that, based on the present record, summary judgment is not warranted in NVR's favor on this ground. Whether and to what extent the Rohrbachs made improvements to the home, and their reasons for choosing to continue residing in the home, are questions for the jury to decide.

---

[65] *Umbelina v. Adams*, 34 A.3d 151, 157 (Pa. Super. Ct. 2011) (quoting *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 766 (Pa. Super. 1999)).

[66] *Lavecchia v. Fleming*, 669 F. Supp. 3d 342, 350 (E.D. Pa. 2023).

[67] *Id.*

[68] Def.'s Mem. Supp. Mot. Summ. J. at 15 [Doc. No. 74-1].

[69] Pls.' Resp. Opp'n Summ. J. at 11 [Doc. No. 81-2].

[70] *Id.*

3. *Unclean Hands*

Finally, NVR asserts that the doctrine of unclean hands bars the Rohrbachs from pursuing the equitable remedy of rescission. NVR points to evidence that the Rohrbachs "barred NVR from their property and knowingly prevented or frustrated NVR's performance under the Purchase Agreement and Limited Warranty."[71] Therefore, NVR contends, the Rohrbachs rejected an otherwise "adequate remedy at law . . . which is fatal to the rescission claim."[72]

However, if the Court were to accept NVR's position, rescission would never be available to the Rohrbachs. Had the Rohrbachs permitted NVR to enter the home and (as NVR contends) make all necessary repairs to their property, it would bolster NVR's claim that the Rohrbachs availed themselves of the contractual remedies under the Agreement and therefore waived rescission as an available remedy. But because the Rohrbachs refused to permit NVR from entering the home after a certain point, NVR now argues that the Rohrbachs are barred from seeking rescission on the basis of having unclean hands.

The key question at this stage is not whether the Rohrbachs should or should not have permitted NVR to make repairs, but rather whether the Rohrbachs were fraudulently induced into entering the transaction and were injured to such an extent that rescission is an appropriate remedy. It is for the jury to consider the available evidence, including testimony from each of the parties' experts about the extent and characteristics of the defects, to decide whether the alleged defects (viewed individually or collectively) are such that the Rohrbachs are entitled to the equitable remedy of rescission. The Court will deny summary judgment on this ground.

---

[71] Def.'s Resp. Opp'n Mot. Summ. J. at 7 [Doc. No. 82].

[72] *Id.* at 9.

## C. Withdrawal of Claims

Unfortunately, the Court must address one remaining issue. NVR has filed email communications from Plaintiffs' counsel as exhibits, purportedly showing the Rohrbachs' voluntary abandonment of certain claims.[73] The Court will not, under any circumstances, accept email communications unilaterally produced by one party to adjudicate the status of the claims and remedies being pursued in this case. Only documented motions with appropriate exhibits attached, or stipulations from the parties, can serve to dismiss the claims. All claims pleaded in the Second Amended Complaint are considered to be operative at this time.

## IV. CONCLUSION

For the reasons stated herein, the parties' cross-motions for summary judgment will be denied. An appropriate order follows.

---

[73] *See* Def.'s Mot. Summ. J., Ex. 34 [Doc. No. 74-36]; Def.'s Mot. Summ. J., Ex. 35 [Doc. No. 74-37].